## BENNING SANBORN *versus* THOMAS NEILSON.

An offer of a sum of money by a party, by way of compromise of an existing controversy, is not to be used as evidence against him.

But an admission of a particular fact, made during a treaty for a compromise, may be given in evidence as a confession.

In an action for criminal conversation with the plaintiff's wife, evidence that the character of the wife for chastity was bad before she was married to him, that the plaintiff had lived with her after he had notice of her improper intercourse with the defendant, that he had connived at her intimacy with other men, or that the plaintiff had been improperly intimate with other women, is no answer to the action, but goes only in mitigation of the damages.

But if a husband suffers his wife to live openly and publickly as a prostitute, and a man is thereby drawn into criminal conversation with her, no action lies.

And in such a case, the jury may be properly instructed to look not only to the character and conduct of the husband and wife to determine what such a husband ought to recover for criminal conversation with such a wife, but to the conduct of the defendant to determine what he ought to pay.

THIS was an action for criminal conversation with the plaintiff's wife, and was tried here at May term, 1827, upon the general issue.

It appeared in evidence, in the course of the trial, that the plaintiff and defendant, having agreed to meet on the 14th July, 1826, at the house of the plaintiff, for the purpose of adjusting the controversy which had arisen between them in relation to the intercourse of the defendant with the plaintiff's wife, the defendant went to the house at the time appointed, and the plaintiff and his wife and the defendant had a long conversation on the subject. And two persons, who had been placed by the plaintiff, without the knowledge of the defendant, in such a situation as to hear the conversation without being seen themselves, were called as witnesses to prove certain confessions of the defendant made in the said conversation. The defendant's counsel objected that they ought not, under the circumstances, to be permitted to state the confessions, because what they had heard the defendant say, was said during the pendency of, and in relation to, a compromise. The court, for the purpose of ascertaining fully the nature of the confessions, and the circumstances under which they were made, and remarking to the defendant's counsel, that if it should, in the end, appear that the confessions were made under

such circumstances that they ought not to be admitted
in evidence, the court would give to the jury proper in-
structions in relation to the subject, admitted the testi-
mony.    The witnesses testified, that in the course of the
conversation the defedant stated, that a criminal inter-
course between him and the plaintiff's wife commenced
in the year 1810, and was continued until the year 1821,
and the defendant offered to take one of the children
which the plaintiff's wife had within that period as
his own.

The counsel of the defendant did not again call the
attention of the court to the competency of this evidence,
and the judge who summed up the evidence to the jury,
supposing that the objection was abandoned, left the evi-
dence to the jury as competent testimony.

Evidence was introduced, on the part of the defend-
ant, tending to prove that the plaintiff had been false to
his wife's bed, that the wife's character for chastity was
bad before she was married to the plaintiff, and that al-
though the knowledge of her intimacy with the defend-
ant came to the plaintiff previously to August, 1826, he
continued to cohabit with her until February, 1827. And
there was some evidence, tending to show that the plain-
tiff had sometimes winked at his wife's intimacy with
other men ; but it did not appear that he had so done
with respect to her intimacy with the defendant.

The court instructed the jury, that if they found that
the defendant had criminal conversation with the plain-
tiff's wife, they were bound to find for the plaintiff, there
being nothing in the evidence offered by the defendant
which amounted in law to an answer to the action, al-
though it might mitigate the damages.

The court further told the jury, that if they found for
the plaintiff, he was entitled to recover damages to the
extent of the injury sustained ; that the grounds on
which damages were to be given were wounded feelings,
disgrace, the loss of the assistance and society of the

wife, and the introduction of spurious children into his family to be by him maintained ; and that in estimating the damages, they should look not only to the character and conduct of the plaintiff and his wife, to see what such a husband ought to recover for criminal conversation with such a wife, but to the conduct of the defendant, in order to determine what a person who had conducted as he had done, ought to pay.

The jury found for the plaintiff $1200, damages and the defendant moved for a new trial on the foregoing case.

*Bell*, for the defendant.

The defendant on the case stated moves for a new trial—

1st, Because improper testimony was admitted on the trial.

The admission of the defendant's confessions, as to the adulterous intercourse, and his offer to take one of the children, are of this character, and are clearly not competent evidence. On this point, the law seems to be as laid down by Phillips, " that admissions are evidence when they are made not with a view to a compromise, but while the parties are contesting their rights." 1 Phillips' Ev. 78.

Here, the case finds " that the plaintiff and defendant met at the plaintiff's house expressly for the purpose of adjusting the controversy, which had arisen between them in relation to the intercourse of the defendant with the plaintiff's wife. Phillips goes farther, and says, " a statement by a party as to the subject matter or merits of the action will not be admitted to his prejudice, if made under a compromise." 2 Phillips' Ev. 7.

The same doctrine is laid down in *Cumming* v. *French*, by Lord Ellenborough, 2 Campbell 106.

And Lord Kenyon, in *Waldridge* v. *Kennison*, 1 Esp. N. P. R. 143, said, " that certainly any admission or confession made by the party respecting the subject matter of

the action, obtained while a treaty was depending, and under faith of it, and into which the party might have been hauled by the confidence of a compromise taking place could not be permitted to be given in evidence to his prejudice."

And in *Gregory* v. *Howard*, 3 Esp. N. P. R. 113, the same eminent judge said, "evidence of confessions made for the purpose of settling matters in dispute I shall never admit."

On the whole, the rule of law seems clearly settled, than an offer made by one party to the other or any confession in relation to the subject of the suit made under the faith of a compromise, is incompetent evidence. The evidence therefore, of the admissions of adulterous acts and intercourse as drawn from the defendant, and of the other admissions made by him were all incompetent and ought not to have been received.

The defendant objected to all this evidence when it was offered, he therefore now contends, that for the admission of this testimony the verdict must be set aside.

2d, The defendant also moves for a new trial on account of the misdirection of the court to the jury in point of law.

"Evidence was introduced on the part of the defendant to prove that the plaintiff had been false to his wife's bed—that he cohabited with his wife several months after he had admitted his knowledge of his wife's intimacy with the defendant—and that the plaintiff had sometimes *winked* at his wife's intimacy with other men, though it did not appear that he had so done with regard to the defendant.

"The court instructed the jury, that if they found that the defendant had criminal intercourse with the plaintiff's wife, they were bound to find for the plaintiff— there being nothing in the evidence offered by the de-

fendant which in law amounted to an answer to the action.

Of this instruction to the jury the defendant complains,

1st, Because the adultery of the husband and his admitted intercourse with other women is a bar to this action. 1 Selw. N. P. 11.

2d, Because if the wife be suffered to live as a common prostitute with the privity of the husband, the action cannot be maintained. 1 Selw. N. P. 11 ; Bul. N. P. 27 ; *Hodges* v. *Windham*, Peake's N. P. C. 39.

That the adultery of the husband is a bar to this action was ruled by Lord Kenyon in *Wyndham* v. *Wycomb*, 4 Esp. Rep. 16, and in *Sturt* v. *Marquis* of Blanford, ditto, both cited in Selw. 11.

His Lordship also held, in *Hodges* v. *Windham*, " that the plaintiff's having suffered an adulterous connexion with other men was equally a bar, as if he had permitted the present defendant to be connected with her. Peake's N. P. 39.

On the evidence, then, in this case, the jury should have been instructed, that if they believed that the plaintiff and his wife had agreed to live in adultery with whoever might come in their way, and that the plaintiff had acted upon this agreement, the action could not be maintained.

Or if they believed that the defendant suffered his wife to live as a common prostitute with other men, or *consented* to her adulterous intercourse with the defendant, the action would be barred.

There was certainly evidence in the case, from which the jury might have lawfully found for the defendant on both points.

The acts and declarations of the plaintiff to Mrs. West, Mrs. Chase, Mr. Smith, Mr. Upton, and Mr. E. Sanborn, and Mr. Baker, all tended to establish the one or the other of these points, and were by the charge of the court taken from the consideration of the jury.

The defendant also objects to the charge of the court in relation to the rule of damages if the action were maintainable.

The court told the jury "that in estimating the damages, they should look not only to the character and conduct of the plaintiff and his wife, to see what such a husband ought to receive for criminal connexion with such a wife, *but to the conduct of the defendant, in order to determine what a person who had conducted as he had, ought to pay.*

It is to this latter clause in relation to the defendants conduct that we object—if it is to be understood in the sense in which it was given to the jury, that the damages might be increased by the jury as a punishment on the defendant for prostituting his fair character, by so degrading a connexion with the defendant's wife, we think it entirely incorrect.

This action is not given to redress society for the injury done to the public morals by the defendant's misconduct. It is in principle given to the husband to compensate him for the damage which he has sustained in his relations with his *own wife and family.*

The injury is no greater, to say the least, when inflicted by a defendant of good antecedent moral character and deportment, and of respectable standing in society, than where it arises from the act of the most abandoned wretch in the community.

In short, the plaintiff is entitled to the worth of *his domestic comforts* and the defendant who has despoiled him of these must make him good in damages.

But this in no way entitles the plaintiff to put in his pocket the price of the defendant's degradation. If he has sunk deeper in infamy by connecting himself with base and infamous people, this will not authorise these same base and infamous people to thrust their hands still deeper into his pockets and plunder him the more. In a word, no man would quarrel with the abstract principle that a man of elevated character and standing in society

should suffer all that by law he ought for a connexion as disgusting as it is degrading.

But when we consider, on the other hand, that by the application of this principle, as in this case, the degraded wretches rise as the man of moral worth sinks, and that they rise and profit in proportion as he sinks, and upon his ruin, we are led to doubt either the soundness or the application of the rule itself, and we apprehend it will be entirely clear, that however reasonable it may be that the defendant should be punished for his misconduct, when prosecuted by the state, the plaintiff has no claim to profit by his degradation.

*Woodbury*, on the same side.

*Goodall* and *Sullivan*, the attorney general, for the plaintiff.

The opinion of the court was delivered by

RICHARDSON, C. J. We shall, in the first place, consider whether the confessions of the defendant were, under the circumstances, competent testimony.

It seems to be a well settled rule, that an offer by a party, to pay a sum of money by way of compromise of an existing controversy, is not to be used as evidence against him. But an admission of particular facts made during a treaty for a compromise may be given in evidence as a confession. 4 Pick. 374, *Gerrish* v. *Sweetser* ; 2 ditto, 285, *Marsh* v. *Gold* ; 1 Esp. N. P. C. 143, *Waldridge* v. *Kennison* ; Peake's N. P. C. 5, *Slack* v. *Buchannan* ; Phillip's Ev. 78.

In the case now under consideration, the admissions of the defendant were admissions of independent facts,—admissions not likely to have been made for the purpose of buying peace, but which must have been prompted by a consciousness of their truth, and we are of opinion that they were properly left to the consideration of the jury.

But was the evidence of an offer by the defendant to take one of the children, which the plaintiff's wife had

during the period of the defendant's supposed intimacy with her, as his own, competent evidence ? This evidence stands on ground somewhat different from admission of an independent fact. And if the defendant, without any express admission of his intimacy with the wife, had simply offered, in order to end the controversy with the husband, to take and maintain one of the children, however singular and extraordinary such an offer might have appeared, yet still we are not prepared to say it would have been competent evidence of improper intercourse between the defendant and the wife. But the offer in this case followed an express admission of the improper intercourse, and was evidently founded upon that admission. Now it seems to us, that the ground upon which such an offer so made is to be held to be inadmissible in evidence, is not very obvious. The reason why a mere offer of money or other thing by way of compromise is not to be evidence against him who makes it, is very plain and easily understood,—such an offer neither admits nor ascertains any debt, and is no more than saying that so much will be given to be rid of the controversy. But where the offer has been grounded upon an express admission of a fact, and that fact afterwards comes to be controverted between them, there seems to be no ground on which the evidence of the offer can be excluded. Thus if A sue B for $100, and B offer to pay $20, this offer shall not be received as evidence, because it may have been made merely for the sake of peace where nothing was due. But in such a case, if B admit expressly that twenty dollars are due, and offer to pay that sum, then it seems to us that both the admission and the offer are evidence. We are, therefore, of opinion, that the offer made by the defendant in this case was, under the circumstances, admissible in evidence.

Another question which is raised in this case, is, whether the instructions given by the court to the jury in relation to the evidence introduced by the defendant,

were correct. On this subject, the jury were told in substance, that the circumstances, that the character of the wife for chastity was bad before she was married to the plaintiff, that the plaintiff had lived with her after he had notice of her improper connexions with the defendant, that he had connived at her intimacies with other men, and had himself been false to her bed, were no answer to the action. The question is, were these instructions proper ? With respect to the wife's character for chastity before her marriage, it seems to be settled, that evidence of such character goes in mitigation of the damages, but not in bar of the action. 4 Starkie, 444 ; Buller's N. P. 27.

As to the circumstance that the plaintiff lived with his wife after he had knowledge of her want of fidelity to his bed, this may be evidence that he had forgiven her offence, but is clearly no evidence that he had forgiven the offence of the defendant. We are decidedly of opinion, that this circumstance could be no answer to the action.

And the better opinion is, that the evidence of the plaintiff's intimacy with other women, could go only in mitigation of the damages. 4 Starkie, 443 ; 4 Espin. N. P. C. 237 ; Buller's N. P. 27.

With respect to the plaintiff's conniving at the intimacies of his wife with other men, the rule of law is, if the wife is suffered to live as a prostitute with the privity of her husband, and a man is thereby drawn into criminal conversation with her, this goes in bar of the action, because the damage is without an injury. But if it be without the privity of the husband, it will go only to the damages, let her be ever so profligate. 4 Starkie, 443 ; Buller's N. P. 27.

We are of opinion, that in order to constitute a defence of this kind, it must be shown that the wife was permitted, by the husband, to live openly and publicly in a state of common prostitution, in such manner that his assent

to her being a common prostitute may be reasonably presumed. This, and nothing short of this, is an answer to the action. Certainly, if a husband, either expressly or tacitly assent to the criminal connexion, he can maintain no action.

But in this case there was no evidence introduced, which showed even a tacit consent of this plaintiff to the criminal conversation which passed between his wife and this defendant ; no evidence that could be submitted to a jury as furnishing any ground to presume such assent. There was some slight evidence that he had sometimes connived at his wife's intimacies with other men, but nothing that afforded the slightest presumption that he had ever assented that she should live as a common prostitute, or that she in fact had ever so lived.

We are, therefore, of opinion, that the jury were properly instructed on this subject.

It has been objected, in this case, that the instructions given to the jury in relation to the damages were incorrect. But after an attentive examination of the subject, we see nothing in those directions which we think ought to have been otherwise. Buller's N. P. 27 ; 4 Starkie, 442.

We are, therefore, of opinion, that there ought to be
        *Judgment on the verdict.*